**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------------X          Case No.
SHATEENA COOK,

                             Plaintiff,          **COMPLAINT**

        -against-

                                        **PLAINTIFF DEMANDS**
SPEEDWAY LLC and MICHELLE COLES,          **A TRIAL BY JURY**
*Individually,*

                         Defendants.
--------------------------------------------------------------X

       Plaintiff SHATEENA COOK ("Plaintiff"), by her attorneys, PHILLIPS & ASSOCIATES, ATTORNEYS AT LAW, PLLC, hereby complains of the Defendants, upon information and belief, as follows:

## NATURE OF THE CASE

1.    Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), the Family Medical Leave Act, 29 U.S.C. §§ 2601 *et seq.* ("FMLA"), the New York State Human Rights Law, New York State Executive Law §§ 296 *et seq.* ("NYSHRL"), and the New York City Human Rights Law, New York City Administrative Code §§ 8-502(a) *et seq.* ("NYCHRL") and seeks damages to redress the injuries Plaintiff has suffered as a result of being discriminated against due to her pregnancy, sex/gender (female), familial and caregiver status, and for going on FMLA-protected leave, and retaliated against for requesting reasonable accommodations for her pregnancy, including but not limited to requesting and taking a legally protected pregnancy-related FMLA leave.

## JURISDICTION, VENUE, AND PROCEDURAL PREREQUISITES

2.    Jurisdiction of this Court is proper under 42 U.S.C. § 2000e-5(f)(3), 29 U.S.C. § 2601, and

28 U.S.C. §§ 1331 and 1343.

3.     The Court has supplemental jurisdiction over the claims that Plaintiff has brought under state and city law pursuant to 28 U.S.C. § 1367.

4.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) as one or more Defendants reside within the Eastern District of New York or the acts complained of occurred therein.

5.     By: (a) timely filing a Charge of Discrimination with the New York State Division of Human Rights and cross-filing, the same, with Equal Employment Opportunity Commission ("EEOC") on July 14, 2020; (b) receiving a Notice of Right to Sue from the EEOC on September 8, 2020; (c) commencing this action within 90 days of the issuance of the Notice of Right to Sue by the EEOC; and (d) contemporaneously with the filing of this Complaint, mailing a copies thereof to the New York City Commission of Human Rights ("NYCCHR") and the Office of the Corporation Counsel of the City of New York pursuant to the notice requirements of § 8-502 of the New York City Administrative Code, Plaintiff has satisfied all of the procedural prerequisites for the commencement of the instant action. A copy of the Notice of Right to Sue is annexed hereto as Exhibit A; a copy of the transmittal letter to the NYCCHR, *et ano.*, is annexed hereto as Exhibit B.

## PARTIES

6.     At all relevant times, Plaintiff was and is a female resident of the State of New York and County of Kings.

7.     At all relevant times, Defendant SPEEDWAY LLC ("SPEEDWAY") was and is a foreign limited liability company that duly operates in the State of New York.

8.     Defendant SPEEDWAY operates convenience stores and gas stations in about 32 States.

9.     Upon information and belief, Defendant SPEEDWAY employs at least fifty or more

employees.

10.     At all relevant times, Defendant SPEEDWAY acted by and through its agents, servants, and employees, each of whom acted at all times relevant in the course and scope of their employment with and for Defendant SPEEDWAY.

11.     At all relevant times, Defendant MICHELLE COLES ("COLES") was an employee of Defendant SPEEDWAY holding the position of "Senior District Manager."

12.     At all relevant times, Defendant COLES was Plaintiff's supervisor and had the ability to affect the terms and conditions of Plaintiff's employment. Defendant COLES had the authority to hire, fire or affect the terms and conditions of Plaintiff's employment, or to otherwise influence the decisionmaker of the same.

## MATERIAL FACTS

13.     In or around September 2015, Plaintiff began working as a "Cashier" at Defendant SPEEDWAY's 2400 Flatbush Avenue, Brooklyn, New York 11234 store. Throughout her four years of employment with Defendant SPEEDWAY until her unlawful demotion in or around November 2019, Plaintiff was promoted to "Shift Lead" and finally to "Co-manager," which was later renamed to "Lead Manager."

14.     As a Lead Manager, Plaintiff worked approximately 50 hours per week and was being paid approximately $16.00 per hour plus overtime pay.

15.     Plaintiff's estimated 2020 salary had she not been demoted was approximately $44,240.00, which includes her base pay and a monthly performance bonus of approximately $220.00 that she received before her demotion. Plaintiff also received other benefits from Defendant SPEEDWAY, including but not limited to: Dental, Vision, Medical, Life Insurance, Short-Term and Long-Term Disability, 401k plan with a company match of $1.17 per dollar up

to 6% of annual salary.

16.    Plaintiff was qualified for each of the positions that she held and performed well throughout her employment.

17.    In or around the beginning of 2018, Plaintiff was even offered a promotion to be the General Manager of the store where she had been working at but she had to decline the promotion at that time as she had many responsibilities related to caring for her first child.

18.    In or around December 2018, Plaintiff informed Boris (Last Name Unknown), the General Manager at the store where she was working at, that she was pregnant.

19.    Around the time that Plaintiff was six months pregnant, Boris informed Defendant SPEEDWAY's Human Resources Department and/or Defendant COLES of Plaintiff's pregnancy and it was requested of Plaintiff that she submit to them a letter from her doctor stating how far along she was, what her due date was, and if she required any accommodations. Plaintiff indeed submitted such a letter from her doctor.

20.    Soon after, Sheri (Last Name Unknown), a Human Resources representative of Defendant SPEEDWAY, and Defendant COLES were at the store where Plaintiff worked and Plaintiff utilized that opportunity to inquire about the types of leave that were available to her based on her pregnancy.

21.    Defendant COLES stated that she did not know how that worked and that she did not know of any options available to Plaintiff. She then advised Plaintiff to "ask around" to see what benefits were available "if any."

22.    Surprised, Plaintiff asked Defendant COLES if no other woman had been pregnant in her district before and also shared that she had been experiencing heavy vomiting during her pregnancy and was often out of breath.

23.     Defendant COLES gave Plaintiff a repulsed look that Plaintiff understood to mean that she believed that Plaintiff's symptoms were abnormal and she stated that she had only had one female worker that had to be on bedrest because she was older and another female employee that had continued to work until she was eight months pregnant without any issue.

24.     Plaintiff felt very uncomfortable by Defendant COLES' expression and tone.

25.     Plaintiff continued to try to find out what type of pregnancy leave and other benefits were available to her and she submitted the required paperwork for a leave of absence under the FMLA. Her request was approved for leave starting on or about June 12, 2019 and ending on or about September 5, 2019. This period of time was covered by the FMLA.

26.     Concurrently, Plaintiff was also approved for Short Term Disability from on or about June 20, 2019 until June 27, 2019. Plaintiff's Short Term Disability was further extended due to medical reasons through about the end of Plaintiff's pregnancy.

27.     On or about September 23, 2019, Plaintiff received a letter from Defendant SPEEDWAY's Leave of Absence Department informing her that her leave of absence had been extended to the end on November 11, 2019.

28.     Plaintiff then went on New York State Paid Family Leave for about ten weeks after she gave birth.

29.     Plaintiff's requested accommodations for pregnancy-related leave were reasonable and did bot place an undue burden on Defendant SPEEDWAY.

30.     Plaintiff's requested accommodations were granted and Plaintiff was instructed that she did not have to contact Defendant SPEEDWAY until about a week before she was able to return to work.

31.    While Plaintiff was out on leave, Defendant COLES called Plaintiff's partner -- who also works for Defendant SPEEDWAY but in a different district -- and asked him when was Plaintiff returning to work and whether she would be staying at home as a "stay-at-home mom." Plaintiff's partner stated that Plaintiff would be returning to work.

32.    Plaintiff felt extremely uncomfortable that Defendant COLES did not ask her about her return to work directly and called her partner instead.

33.    When Plaintiff contacted Defendant SPEEDWAY about returning to work, she was informed by the Human Resources Department that her position had been allegedly eliminated while she was out on leave and that there was "nothing available for [her]" at the store where she used to work at.  Plaintiff was advised to call Defendant COLES who would be the one to decide where to place Plaintiff.

34.    Upon information and belief, her former position had not been eliminated but filled by another employee who was an "Assistant Manager" when Plaintiff went out on leave.

35.    Defendant COLES told Plaintiff that she was being demoted to "Assistant Manager," which meant that she would be working 40 hours instead of 50.

36.    Plaintiff was shocked to hear that her position had been eliminated as she expected to have her position (or a comparable position) held open for her until her return from her pregnancy-related leave of absence.

37.    Plaintiff understood this to also mean that Plaintiff's maternity/medical leave was an annoyance to Defendant SPEEDWAY and that Defendant SPEEDWAY retaliated against her for engaging in a protected activity by taking the pregnancy-related leaves of absence.

38.    As is also clear by Plaintiff's demotion, Defendant SPEEDWAY did not try or intend to try to assign Plaintiff to a comparable position upon her return from maternity leave even

though, upon information and belief, alternate positions were available.

39. Defendant SPEEDWAY did not want Plaintiff to return to her position because she exercised maternity/medical leave and was a mother with a newborn child - unlike her similarly-situated coworkers.

40. Moreover, any purported excuse for Plaintiff's demotion was merely pretextual.

41. To add insult to injury, at first Plaintiff was also told that she would have to "float" from store to store in order to work her 40 hours, which Plainitff found to be outrageous and in further retaliation for her taking legally protected leaves of absence.

42. Eventually, Defendant SPEEDWAY assigned Plaintiff to a specific store, where she started working on or about November 8, 2019.

43. From on or about November 8, 2019 until her further demotion in or around April 2020, Plaintiff worked 38 hours per week and was being paid about $560.00 per week.

44. At the new location, when Plaintiff asked her General Manager to retrain her because she had been away on leave for some time and would like a quick touch-up, he stated "I am nobody's babysitter" and "I don't have time for that," which made Plaintiff feel extremely uncomfortable.

45. In or around January 2020, Plaintiff was transferred to a different store, in Queens, after complaining to the Human Resources Department about a number of issues that she was having with her new supervisor.

46. Soon after Plaintiff started working at the Queens location, a new coworker of hers informed her that Deborah Gonzalez ("Gonzalez"), the new store's General Manager, had told him that Defendant COLES wanted to fire Plaintiff.

47. Plaintiff felt extremely uncomfortable and terrified of losing her job. Plaintiff understood

this to be related to Plaintiff having been out on pregnancy-related leave of absence.

48.    In or around February 2020, Plaintiff informed Gonzalez that she was pregnant again and provided her with a doctor's note about it.

49.    Soon after, Plaintiff's partner informed Plaintiff that Defendant COLES had called him again to ask him if Plaintiff was pregnant again and why Plaintiff was "telling everyone" that she was pregnant. Defendant COLES stated, **"I'm not going to go through this shit again."  Defendant COLES was referring to Plaintiff's pregnancy as "this shit".**

50.    Plaintiff felt extremely uncomfortable, insulted, degraded, and offended by Defendant COLES' statements.

51.    In or around late February 2020, Gonzalez informed Plaintiff that her schedule would change so that she could go on vacation.

52.    When Plaintiff protested that she already had a medical appointment scheduled for her to get a sonogram on one of the days that Gonzalez wanted her to work on, Gonzalez stated, "Here we go with the excuses," making Plaintiff feel extremely uncomfortable. Plaintiff was effectively requesting a reasonable accommodation related to her pregnancy.

53.    Plaintiff explained that she was not making excuses and that her medical appointments had to be scheduled weeks in advance and were hard to change, to which Gonzalez responded that Plaintiff worked for *her* and if she wanted Plaintiff to change her schedule, then Plaintiff had to change her schedule. Gonzalez also stated that if she told Defendant COLES about Plaintiff saying "no," "guess what will happen to [Plaintiff]," essentially threatening Plaintiff's job for requesting a reasonable accommodation related to her pregnancy.

54.    Plaintiff's request was denied and she was forced to miss her appointment for a sonogram,

which caused Plaintiff to feel extremely distressed and disturbed.

55. **In or around March 2020, Defendant COLES again called Plaintiff's partner and asked her if Plaintiff was going to "keep it," referring to whether Plaintiff would continue or terminate her pregnancy. When Plaintiff's partner told her that Plaintiff would be having the baby, Defendant COLES stated, "I don't think you should. I think you should just get rid of it … You have a lot on your plate already - it's just reality."**

56. Plaintiff felt extremely distressed and offended by Defendant COLES' comments, which affected her to such a degree that she was crying nonstop for days and could not eat or sleep.

57. Around that same week, Plaintiff messaged Gonzalez to inform her that she had been vomiting and would not be able to go to work.

58. Immediately after, Defenant COLES called Plaintiff and started asking her what was going and Plaintiff explained that she was not feeling well and that it was likely due to her pregnancy.

59. Defendant COLES pretended to be surprised to hear that Plaintiff was pregnant and sounded unhappy about it.

60. Soon after, Defendant COLES messaged Plaintiff's partner a picture of Plaintiff working and wrote that Plaintiff had supposedly allowed a cashier to clock in before his time. Defendant COLES then told him that she meant to send it to Gonzalez and urged him to delete it.

61. Upon information and belief, Gonzalez and Defendant COLES were micromanaging Plaintiff in a manner that no other non-pregnant employees were being micromanaged in

an effort to ultimately terminate Plaintiff.

62.  Moreover, since being informed about Plaintiff's pregnancy, Gonzalez put additional pressure on Plaintiff and started complaining to her about her "pace" being slower.

63.  Plaintiff felt extremely stressed by Gonzalez's comments and would often get severe migrains during her shift as she was forced to stand for the duration of her shift and she barely had time to eat anything or use the bathroom during her shift due to Defendant SPEEDWAY's strict "no breaks" policy.

64.  In or around March 2020, Gonzalez would also often tell Defendant COLES that she "need[s] a guy" to do Plaintiff's work because Plaintiff was allegedly not moving at Gonzalez's pace.

65.  These comments made Plaintiff feel extremely uncomfortable. Plaintiff understood these comments to mean that Gonzalez would prefer to have a non-pregnant employee working for her.

66.  In or around the end of March 2020, Defendant COLES messaged Plaintiff on her day off and demanded that Plaintiff call her. On the phone, Defendant COLES claimed that Gonzalez had stated that she was not happy with Plaintiff's performance and that Plaintiff had not done a "cigarette count," to which Plaintiff replied that from her first day of working with Gonzalez she had been told that the overnight employee of the store was responsible for the cigarettes. Defendant COLES then asked Plaintiff what time she was working the following day and stated that she would come to the store and have a meeting with Plaintiff.

67.  The following morning, on or about March 31, 2020, Plaintiff text messaged Idiyat (Last Name Unknown), the Human Resources representative of Defendant SPEEDWAY for the

store where Plaintiff worked, about the way that Gonzalez had been treating her since Plaintiff informed her that she was pregnant in February 2020, including the fact that was unfairly demoted after returning from her pregnancy-related leave or absence.  Plaintiff also wrote that this treatment has caused her a lot of stress mentally and emotionally.

68.    Upon information and belief, Idiyat informed Defendant COLES and Gonzalez about Plaintiff's complaint of discrimination and retaliation on the basis of her pregnancy.

69.    Later in the day, Defendant COLES went to the store where Plaintiff was working and her, Gonzalez, and Plaintiff had a meeting where Gonzalez barrated Plaintiff with a number of things that Plaintiff had supposedly been doing wrong. Plaintiff had not been reprimanded or written-up for any of the alleged mistakes.

70.    **At the end of the meeting, Defendant COLES and Gonzalez informed Plaintiff that she was being further demoted to "Customer Service Representative."**

71.    **After the meeting, Plaintiff called the Employment Services Department and she was informed that her pay was being reduced to $15.25 per hour and that she would no longer receive paid sick time or paid pregnancy-related leave. Plaintiff's hours were also reduced to approximately 30 hours per week.**

72.    **Plaintiff's demotion was clearly discriminatory in anticipation of Plaintiff requesting the reasonable accommodation of a pregnancy-related leave and/or in further retaliation for her having gone on a long pregnancy-related leave and complaining of discrimination.**

73.    Upon information and believe, Defendant COLES told another District Manager that she was trying to get Plaintiff transferred to another District so that she would not have to "deal with it," referring to Plaintiff's second pregnancy and pregnancy-related accommodations.

74.    Soon after Plaintiff's demotion, Plaintiff was told by another employee of Defendant SPEEDWAY that Gonzalez had told him that she could get Plaintiff her position back at the snap of a finger. Plaintiff felt extremely uncomfortable by this comment and felt even more exasperated by Defendants' treatment.

75.    Starting on or about April 13, 2020, Plaintiff's hours were further reduced to only 24 hours per week solely on the basis of her pregnancy.

76.    When Plaintiff complained about this reduction and about it affecting her caregiving responsibilities, Gonzalez simply stated that allegedly the Human Resources Department had instructed Gonzalez to take Plaintiff off the store's Tuesday schedule.

77.    Following this further reduction of Plaintiff's work hours, Plaintiff rearranged her caregiver responsibilities in relation to her less than one year old baby and informed Gonzalez that she would be unavailable to work on Tuesdays and Fridays for that reason moving forward.

78.    In or around June 2020, Plaintiff's hours were further discriminatorily reduced to about 18 hours per week solely on the basis of her pregnancy.

79.    Upon information and belief, other non-pregnant employees were being assigned more work hours than Plaintiff. Moreover, upon information and belief, even part-time workers were getting more work hours than Plaintiff who was a "full-time" employee in paper.

80.    Plaintiff complained to Gonzalez about the further reduction to her work days, and as a result to her salary, at which point Gonzalez told her that she would add more hours to her work schedule.

81.    However, that did not happen and Plaintiff continued to work about 18 hours per week until she went out on her pregnancy-related leave on or about July 31, 2020.

82.    Plaintiff again perceived this further reduction of her work hours to be in further discrimination against her on the basis of her pregnancy and caregiver status, since Gonzalez did not accommodate Plaintiff's requested work schedule based on her caregiver duties and instead, upon information and belief, gave the shifts that Plaintiff could work to other employees that did not have caregiver duties and were not pregnant. Upon information and belief, Gonzalez routinely granted work adjustments to workers without caregiving responsibilities.

83.    **Defendants created a hostile work environment and demoted Plaintiff solely because of Plaintiff's sex/gender and pregnancy, and any other reason supplied was and is merely pretextual. But for the fact that Plaintiff was pregnant and female, Plaintiff would not have been discriminated and retaliated against.**

84.    Defendants possess no good faith business justification for the adverse employment actions taken against Plaintiff herein.

85.    Based on the above, as well as on the temporal proximity between Plaintiff's disclosure of her pregnancy and need for a reasonable accommodation, and the time that Plaintiff was demoted, it is clear that Defendants retaliated against Plaintiff due to her pregnancy and due to her pregnancy-related need for accommodations.

86.    Upon information and belief, Defendants falsely believed that Plaintiff's pregnancy would interfere with her ability to perform her job duties in the future.

87.    Plaintiff was qualified for her position and could perform the duties of her job working for Defendants.

88.    Plaintiff was unlawfully discriminated and retaliated against, humiliated, and degraded, and as a result, suffers loss of rights, emotional distress, loss of income and earnings.

89.   Defendants' actions and conduct were intentional and intended to harm Plaintiff.

90.   As a result of Defendants' actions, Plaintiff feels extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

91.   As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff further experienced severe emotional distress.

92.   As a result of the above, Plaintiff has been damaged in an amount in excess of the jurisdiction of the Court.

93.   Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.

94.   As such, Plaintiff demands punitive damages as against Defendants, jointly and severally.

**<u>AS A FIRST CAUSE OF ACTION</u>**
**DISCRIMINATION UNDER TITLE VII**
**(Against Defendant SPEEDWAY)**

95.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

96.   This claim is authorized and instituted pursuant to the provisions of Title VII for relief based upon the unlawful employment practices of Defendant SPEEDWAY. Plaintiff complains of Defendant SPEEDWAY's violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's pregnancy and gender (female).

97.   Defendant SPEEDWAY engaged in unlawful employment practices prohibited by Title

VII by discriminating against Plaintiff because of her pregnancy and gender (female).

### AS A SECOND CAUSE OF ACTION
### RETALIATION UNDER TITLE VII
### (Against Defendant SPEEDWAY)

98.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

99.     Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a) provides that it shall be an unlawful employment practice for an employer:

> (1) to…discriminate against any of his employees…because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

100.    Defendant SPEEDWAY engaged in unlawful employment practices prohibited by Title VII by terminating Plaintiff because of her engagement in a protected activity related to her pregnancy and sex/gender (female).

### AS A THIRD CAUSE OF ACTION
### RETALIATION UNDER THE FMLA

101.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

102.    The FMLA provides that eligible employees are entitled to take up to 12 weeks of leave in any 12-month period because of a serious health condition that makes the employee unable to perform the functions of the position of such an employee.

103.    Section 29 U.S.C. 2615 (a) (1) of the FMLA states in pertinent fact:

> It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.

104.    At all relevant times, Plaintiff was an eligible employee under the definitional terms of the

FMLA.

105.   Plaintiff  requested an FMLA leave from Defendants with whom she had been employed for at least twelve months pursuant to the requirements of the FMLA.

106.   Further, Plaintiff had at least 1,250 hours of service with Defendant SPEEDWAY during the prior twelve months.

107.   Defendant SPEEDWAY willfully discriminated and retaliated against Plaintiff for taking leave under the FMLA. Plaintiff was demoted, transferred to a different job location, and was stripped of a number of work privileges that she enjoyed before her FMLA leave, including a monthly performance bonus and overtime work hours.

## AS A FOURTH CAUSE OF ACTION
## DISCRIMINATION UNDER THE NYSHRL

108.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

109.   Executive Law § 296 provides that,

> 1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's … **sex** [and/or] **familial status** … to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

110.   Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of her pregnancy and sex/gender (female) and familial status.

## AS A FIFTH CAUSE OF ACTION
## RETALIATION UNDER THE NYSHRL

111.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

112. Executive Law § 296 provides that, "7. It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has filed a complaint, testified, or assisted in any proceeding under this article."

113. Defendants have engaged in an unlawful discriminatory practice in violation of the NYSHRL when they terminated Plaintiff for seeking a reasonable accommodation for her pregnancy.

**AS A SIXTH CAUSE OF ACTION**
**AIDING AND ABETTING UNDER THE NYSHRL**
**(Against Defendant COLES)**

114. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

115. New York State Executive Law §296(6) provides that it shall be an unlawful discriminatory practice: "For any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

116. Defendant COLES engaged in an unlawful discriminatory practice in violation of the NYSHRL by aiding, abetting, inciting, compelling and coercing the above discriminatory conduct.

**AS A SEVENTH CAUSE OF ACTION**
**DISCRIMINATION UNDER THE NYCHRL**

117. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

118. The New York City Administrative Code § 8-107(1) provides that

It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived … **gender** [and/or] caregiver status … to refuse to hire or employ or

to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

119.   Defendants engaged in an unlawful discriminatory practice by discriminating against and Plaintiff because of her pregnancy, gender (female), and caregiver status.

## AS AN EIGHTH CAUSE OF ACTION
## RETALIATION UNDER THE NYCHRL

120.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

121.   The New York City Administrative Code §8-107(7) provides that it shall be unlawful discriminatory practice: "For an employer ... to discriminate against any person because such person has opposed any practices forbidden under this chapter ... "

122.   Defendants have engaged in an unlawful discriminatory practice in violation of the NYCHRL when they terminated Plaintiff for seeking a reasonable accommodation for her pregnancy.

## AS A NINTH CAUSE OF ACTION
## AIDING AND ABETTING UNDER THE NYCHRL
## (Against Defendant COLES)

123.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

124.   The Administrative Code of City of New York§ 8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

125.   Defendant COLES engaged in an unlawful discriminatory practice in violation of the NYCHRL by aiding, abetting, inciting, compelling and coercing the above discriminatory conduct.

## **JURY DEMAND**

126. Plaintiff demands a trial by jury.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants:

A.     Declaring that Defendants engaged in unlawful employment practices prohibited by Title VII, the FMLA, NYSHRL, and the NYCHRL, in that Defendants discriminated against Plaintiff on the basis of her pregnancy and sex/gender (female), familial and caregiver status, and retaliated against for requesting reasonable accommodations for her pregnancy, including but not limited to requesting and taking a legally protected pregnancy related FMLA leave and complaining about discrimination;

B.     Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendants' unlawful discrimination and to otherwise make her whole for any losses suffered as a result of such unlawful employment practices;

C.     Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to her reputation in an amount to be proven;

D.     Awarding Plaintiff punitive damages;

E.     Awarding Plaintiff attorneys' fees, costs, disbursements, and expenses incurred in the prosecution of the action;

F.   Awarding Plaintiff such other and further relief as the Court may deem equitable, just and

proper to remedy the Defendants' unlawful employment practices.

Dated: New York, New York
       December 2, 2020

                                        PHILLIPS & ASSOCIATES,
                                        ATTORNEYS AT LAW, PLLC

                            By:

                                        Brittany A. Stevens, Esq.
                                        Katerina Housos, Esq.
                                        *Attorneys for Plaintiff*
                                        45 Broadway, Suite 430
                                        New York, New York 10006
                                        T: (212) 248-7431
                                        F: (212) 901-2107
                                        bstevens@tpglaws.com
                                        khousos@tpglaws.com